# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | Case No. 1:19CR00045 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **LUIS CARLOS CASTANO,** ) | JUDGE JAMES P. JONES |
| ) | |
| Defendant. ) | |

The defendant, proceeding pro se,[1] has filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons set forth hereafter, it is **ORDERED** that the motion, ECF No. 56, is DENIED.

The defendant was sentenced by this court just over a year ago, by judgment entered August 19, 2020, to 72 months imprisonment plus a consecutive 24 months imprisonment for violation of the conditions of his supervised release in Case No. 1:20CR00011. He is currently incarcerated at FCI Williamsburg and has a projected release date of October 23, 2025. The grounds of the defendant's motion are his fear of serious illness from COVID-19 and the need to care for his 15-year-old daughter due to the passing of his father and the poor health of his mother.

---

[1] The Federal Public Defender was appointed and permitted to file a supplemental motion on behalf of the defendant, but no supplemental motion was ever filed and the deadline has passed. The government was also permitted to respond to the defendant's motion, but it did not do so.

The governing statute provides that a sentence may be reduced if "extraordinary and compelling reasons warrant such a reduction" and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission has not issued any applicable policy statements after the statute was amended by the First Step Act in 2018. Although I may not reduce the defendant's sentence pursuant to a non-retroactive change in sentencing law, the Fourth Circuit has held in *United States v. McCoy*, 981 F.3d 271, 284, 286 (4th Cir. 2020), that when deciding a compassionate release motion, a district court may consider any extraordinary and compelling reason raised by the defendant. In exercising my discretion under § 3582(c)(1)(A)(i), I must consider the principles set forth in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021), including the factors described in 18 U.S.C. § 3553(a), to the extent they are applicable.

Castano contracted COVID-19 while incarcerated in December 2020 and experienced severe illness. He spent several weeks on a ventilator and was hospitalized for nearly two months. He continues to suffer some effects of the virus, although he has largely recovered. Castano is obese and suffers from high blood pressure and an elevated heart rate, as well as damage to his lungs resulting from his previous bout of COVID-19. He fears serious injury or death if he contracts the virus again. The medical records he submitted in support of his motion do not

indicate whether he has been fully or partially vaccinated against the disease, and he does not state whether he has been offered a vaccine while incarcerated.

While I am sympathetic to Castano's experience with COVID-19, it is my understanding that the vast majority of inmates in the custody of the Bureau of Prisons ("BOP") have now been offered a vaccine to inoculate them against the virus. Additionally, Castano's prior infection should provide him with some level of protection against subsequent serious illness if he were to become reinfected. Currently available data indicates that while it is possible for a person to who has already had COVID-19 to become reinfected, reinfection remains rare. Centers for Disease Control & Prevention, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Oct. 7, 2021). The available evidence suggests that most people who have had COVID-19 have some level of natural immunity following their recovery, although this natural immunity may not be as robust as the protection provided by a vaccine. Centers for Disease Control & Prevention, *New CDC Study: Vaccination Offers Higher Protection than Previous COVID-19 Infection*, https://www.cdc.gov/media/releases/2021/s0806-vaccination-protection.html (Sept. 14, 2021). FCI Williamsburg is currently reporting one confirmed active case among staff and two cases among inmates. Federal Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/ (last

visited Oct. 7, 2021).  Given this data, it appears that Castano's current risk of contracting COVID-19 is low.

Castano also represents that his father, who was the primary caregiver for his now-15-year-old daughter, has died of COVID-19.  His daughter's mother abandoned her when she was six years old, and currently the only available caregiver is Castano's 71-year-old mother, whom he describes as frail and sick.  According to Castano, his mother also had COVID-19 and is suffering from lingering symptoms.  She fell and broke her hip, and she is diabetic and suffers from heart problems.  She does not speak English very well and has trouble communicating with the girl's teachers and school.

Castano has not submitted any affidavits or letters from his mother or daughter.  Given that his daughter is a teenager rather than a young child requiring intensive supervision, I cannot conclude on the limited record before me that his mother's health conditions render her unable to serve as the girl's guardian.  But even if I accepted Castano's recitation of the situation and found that he had established an extraordinary and compelling reason for relief, I would deny his motion based on my consideration of the § 3553(a) factors.  Regardless of the circumstances, I do not believe that Castano would be an appropriate custodian for his daughter.

Castano's criminal history is lengthy, and his conduct grew more serious with each offense. In this case, he pled guilty to being a felon in possession of a firearm and ammunition. The Middle District of North Carolina had previously sentenced him to 10 years imprisonment for the same crime. Clearly that earlier term of incarceration did not deter him from committing the same offense again upon his release. He also had prior convictions for distributing a large amount of heroin and for possessing with intent to distribute marijuana within 1,000 feet of a school.

The facts underlying his conviction in this case were that he was found to be driving with an AR-style rifle loaded with a large capacity magazine and 61 live rounds of ammunition. His vehicle also contained multiple additional rounds of ammunition for that firearm as well as a 12-gauge shotgun and a backpack containing multiple shotgun shells. What he had intended to do with the firearms and ammunition remains a mystery, but his plan could not have been a good one.

Given his escalating criminal history, the fact that his last prison sentence apparently had no deterrent effect, and the dangerous items with which he was found, I varied above the guideline range and sentenced him to six years, to be followed by the 18-month supervised release revocation sentence. Nothing has occurred in the past year to change my belief that the sentence I issued was necessary to serve the statutory purposes, including to protect the public. The fraction of his sentence that he has already served is not sufficient.

For these reasons, I find that a reduction in sentence is not warranted.

                                              ENTER:   October 8, 2021

                                              /s/  JAMES P. JONES
                                              Senior United States District Judge